# Exhibit 1

225th District Court

## Case Summary

### Case No. 2024CI11581

| | | | |
|---|---|---|---|
| **Patricia Alvarado ET AL VS UPS ET AL** | § | Location: | **225th District Court** |
| | § | Judicial Officer: | **225th, District Court** |
| | § | Filed on: | **05/24/2024** |

---

### Case Information

| | |
|---|---|
| Case Type: | OTHER CIVIL CASES |
| Case Status: | **05/24/2024  Pending** |

### Assignment Information

**Current Case Assignment**
Case Number     2024CI11581
Court           225th District Court
Date Assigned   05/24/2024
Judicial Officer  225th, District Court

---

### Party Information

| | | Lead Attorneys |
|---|---|---|
| **Plaintiff** | **Alvarado, Patricia** | **DI CARLO, MARK A**<br>*Retained* |
| | **Barrera, Erica** | **DI CARLO, MARK A**<br>*Retained* |
| | **Brown, Michael** | **DI CARLO, MARK A**<br>*Retained* |
| | **Davis, Jennifer** | **DI CARLO, MARK A**<br>*Retained* |
| | **G., A.** | |
| | **Gomez, Angeli-Rose** | **DI CARLO, MARK A**<br>*Retained* |
| | **Hernandez, Luz** | **DI CARLO, MARK A**<br>*Retained* |
| | **King, Carla Rose** | **DI CARLO, MARK A**<br>*Retained* |
| | **Luna, Tiffany** | **DI CARLO, MARK A**<br>*Retained* |
| | **Martinez, Tamica** | **DI CARLO, MARK A**<br>*Retained* |
| | **Massey, Tiffany** | **DI CARLO, MARK A**<br>*Retained* |
| | **Morales, Yolanda** | **DI CARLO, MARK A**<br>*Retained* |

225th District Court

## Case Summary

**Case No. 2024CI11581**

| | | |
|---|---|---|
| Ogburn, Nicole Faye | **DI CARLO, MARK A** *Retained* | |
| Reyes, Mary Ann | **DI CARLO, MARK A** *Retained* | |
| Rivera, Bianca | **DI CARLO, MARK A** *Retained* | |
| Rodriguez, Jennieka | **DI CARLO, MARK A** *Retained* | |
| Sonora, Brenda | **DI CARLO, MARK A** *Retained* | |
| Trevino, David | **DI CARLO, MARK A** *Retained* | |
| Upton, Krystal | **DI CARLO, MARK A** *Retained* | |
| Velasquez, Esmeralda | **DI CARLO, MARK A** *Retained* | |
| Zapata, Sofia | **DI CARLO, MARK A** *Retained* | |

**Defendant** **FedEx**

**UPS**

---

## Events and Orders of the Court

---

| | |
|---|---|
| 05/24/2024 | New Cases Filed (OCA) |
| 05/24/2024 | PETITION |
| 06/10/2024 | LETTER TO DISTRICT CLERK *Requesting Copies-em 6/12/24* |

Printed on 07/09/2024 at 1:23 PM

FILED
5/24/2024 4:34 PM
Gloria A. Martinez
Bexar County District Clerk
Accepted By: Martha Laura Medellin
Bexar County - 225th District Court

**2024CI11581**

CAUSE NO.:_____

| | | |
|---|---|---|
| PATRICIA ALBARADO; | § | IN THE ___DISTRICT COURT |
| ERICA BARRERA, Individually | § | |
| and ANF of D.R., Minor, | § | |
| Michael Brown, Individually | § | |
| And ANF of V.B, Minor, et al | § | of |
| | § | |
| Plaintiffs | § | |
| v. | § | |
| | § | |
| UNITED PARCEL SERVICE, INC. | § | |
| A.K.A and DBA as UPS | § | |
| | § | BEXAR COUNTY, TEXAS |
| FEDEX Corporation | § | |
| A.K.A AND DBA AS FedEx | § | |
| | § | |
| Defendants | § | |

<u>PLAINTIFFS' ORIGINAL PETITION</u>

COMES NOW, the Plaintiffs, of Uvalde, Texas:  Patricia Albarado, and Erica Barrera, Individually and ANF of D. R., Michael Brown, Individually and ANF of V.B., Jennifer Davis, Individually and ANF of Z. D., Angeli-Rose Gomez, Individually and ANF of G.B. and A.G., Luz Hernandez, Individually and ANF of N.J., Carla Rose King, Tiffany Luna, Individually and ANF of A.P., Tamica Martinez, Individually and ANF of R.D., Tiffany Massey, Yolanda Morales, Individually and ANF of  Z.G., Nicole Faye Ogburn, Mary Ann Reyes, Individually and ANF of A.S. and A.S., Bianca Rivera, Individually and ANF of G. R., Jennieka Rodriguez, Individually and ANF of V.S, Minor, Brenda Sonora, David Trevino, Individually and ANF of A.T., I.T., Minors Jane Doe, and D.T., Krystal Upton, Individually and ANF of J.T. and B.T., Esmeralda Velasquez, Individually and ANF of C.V., Sofia Zapata, Individually and ANF of M.S. III.

<u>DEFENDANTS</u>

United Parcel Service,  aka UPS, has a principal office in San Antonio, Texas with decision makers and daily affairs of more than common low level decision makers. One of the principal offices is located at 7129 Eckhert Rd.; San Antonio  TX 78238.

Federal Express, aka Fed-Ex, has a principal office in San Antonio, Texas with decision makers  and daily affairs of a more than common low level decision makers. One of the principal offices is at 151 Interpark Blvd., San Antonio, TX  78216.

UPS may be served at its principal office located at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328. UPS is a nationwide network shipping carrier that facilitates package pick-up and delivery services throughout the United States and worldwide. At all relevant times, UPS was engaged in the business of labeling, promoting, packaging, and delivering products, including the Hellfire trigger, for the domestic and international market, for use by untrained civilians and young adults.

FEDEX  corporation  may be served at its Principal Executive Office at 942 South Shady Grove Road Memphis Tennessee. FEDEX is a nationwide network shipping carrier that facilitates package pick-up and delivery services throughout the United States and worldwide. At all relevant times, FEDEX was engaged in the business of labeling, promoting, packaging, and delivering products, including the DAVIS FIrearm Ar-15, for  the domestic market, for use by untrained civilians and young adults.

<u>DISCOVERY CONTROL PLAN</u>

The plaintiffs intend that discovery be conducted under LEVEL 3 OF RULE 190 of the TEXAS RULES OF CIVIL PROCEDURE.

Copy from re:SearchTX

<u>COMMON/ASSUMED NAME</u>

The Defendants are being sued under their common or assumed name per Tex. R. Civ. P. 28. In the event the party is misnamed or are not included herein, it is the Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice

<u>FACTS</u>

1.   The facts contained in this petition were pieced together without access to police reports, incident video statements, autopsy reports, ballistic reports, blood splatter reports, blood tests,  as no state agency nor federal agency responded to open records request nor Freedom of Information Act request including the ATF, the Uvalde Independent School District, the District Attorney of Uvalde, the Texas Department of Public Safety, the City of Uvalde, The Uvalde Police Department; in an apparent concerted effort to deny the children and families of Uvalde Texas Due Process of Law. Without said information, Plaintiffs acknowledge and agree they will amend their pleadings when the information becomes available, and as it is necessary.

2.   On May 24, 2022, Salvador Ramos, the shooter, murdered, assaulted, kidnapped, and terrorized the teachers and students at Robb Elementary  School in Uvalde, Texas. The deadly mass shooting lasted for approximately 77 minutes from the time he entered the school to the time he was killed. Salvador Ramos, who entered the school through an unlocked door or defective door and locking system on the school's west side as children were in the school celebrating their last day of class before the summer break. Ramos murdered nineteen (19) third and fourth-grade children and students in classrooms 111 and 112 and left three teachers dead or dying. The Plaintiffs

and school children suffered mental and emotional trauma as a result of hearing the shots, fearing for their lives, and the lives of their classmates. Upon information and belief, the weapon Ramos was armed with was the Daniel Defense AR-15, which was modified into a fully automatic weapon with the use of the Hellfire Gen 2 on that day, which turned the Daniel Defense AR-15 into an automatic or semi-automatic weapon. Based upon gathered information the shooter, Salvador Ramos, was under 18 when he purchased the AR-15 online, and the modifying Hellfire Gen. 2.

8.0   The Conditions of Carriage for UPS states:  "Shipments must not contain goods which might endanger human or animal life or any means of transportation, or which might otherwise taint or damage other goods being transported by UPS, or the carriage, export or import of which is prohibited by applicable law of common carriers." The Plaintiff's assert that the contract of carriage violations constitute negligence per se.

9.0  The Conditions of Carriage for Federal Express states:  8.1     The following items are not acceptable for carriage to any international destinaton: 2) EXPLOSIVES, FIREWORKS AND OTHER ITEMS OF AN INCENDIARY OR FLAMMABLE NATURE; 6)    FIREARMS, WEAPONRY, AMMUNITION AND THEIR PARTS.

9.1.    Additional restrictions may apply depending upon destination and service and service option used and various regulatory and customs clearances may be required for certain commodities, therefore extending the transit time. FedEx reserves the right to reject Packages based upon these limitations or for reasons of security or safety. FedEx shall be entitled to charge an administrative fee for packages rejected and for the costs of returning goods, where applicable, to the Sender. Further information is available upon request.

Copy from re:SearchTX

9.2.   DANGEROUS GOODS  The Sender must provide and shall be liable for the fully effective packaging of all Dangerous Goods, in compliance with all requirements of the latest edition of the IATA Dangerous Goods Regulations with regard to classifications, packaging, marking and labeling, and with any other applicable laws, regulations or rule

9.3    All Dangerous Goods which are destined for or which transit the U.S.A. must be accompanied by a Sender's Declaration and Certification as required by U.S. law, which the Sender can obtain.

9.4    INSPECTION OF SHIPMENTS   11.1. FedEx may, at its option, or upon the request of the competent authorities, open and inspect any Shipment at any time, and shall incur no liability of any kind therefore.

9.5    In accordance with applicable regulations in various jurisdictions FedEx is required to undertake (random) X-ray screening. FedEx may undertake such screening and the Sender and Recipient hereby waive any possible claims for damages as a result of screening.

The Plaintiff's assert that the contracts of carriage violations establish negligence per se.

3. . The Defendant shooter lived at 552 Diaz St., Uvalde, Texas.  The grounds of Robb Elementary School are approximately 924 feet away.  A school zone means within a distance of 1000 feet from the grounds of a public school.  18 U.S.C. § 921(a)(26).

4.   The United States Congress states that "firearms and ammunition move easily in interstate commerce and have been found in increasing numbers in and around schools, as documented in numerous hearings in both the Committee on the Judiciary the House of Representatives and the Committee on the Judiciary of the Senate  18 U.S.C. § 922(q)(1)(C).  In fact, even before the sale of a firearm, the gun, its

component parts, ammunition, and the raw materials from which they are made have moved in interstate commerce; 18 U.S.C. § 922 (q)(1)(D) the occurrence of violent crime in school zones has resulted in a decline in the quality of education in our country." 18 U.S.C. § 921(q) (1) (D) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile, a handgun; or ammunition. 18 U.S.C. § 921 (q)(1)(D). 18 U.S.C. § 922 (q)(1)(D)

A licensed manufacturer may only sell a firearm to a person who does not appear in person at the licensee's business premises only if the transfer states that he is 18 years of age or more. 18 U.S.C. § 922(q)(c)(1). Daniel Defense an online merchant sold the AR-15 to a person, the shooter, who did not state that he was 18 years of age or older; was not 18 years of age; and did not provide proof that he was 18 years of age; Fed-Ex also transported the AR-15 without inquiring as to the age of the purchaser.

5.. The transferor FEDEX did not prior to the shipment of the firearm forward a signed sworn statement to the shooter's residence, and receive a return receipt evidencing delivery of the statement. 18 U.S.C. § 922(c)(2). The transferor Federal Express did not delay shipment or delivery for seven days following receipt of the notification.18 U.S.C.§ 922(c)(3)... The acts of Federal Express resulted in the failure of the guardian of the Shooter Salvador Ramos to prevent the purchase of the AR-15.

6. It is unlawful for a common or contract carrier to transport or deliver in interstate or foreign commerce any firearm with reasonable belief that the transportation would be in violation of 18 U.S.C. § 922. 18 U.S.C. § 922(f)(1). The contract carrier Federal Express transported a weapon that was within 1000 feet of a school zone. The defendant Federal Express is negligent per se for shipping a firearm to a person, the shooter Salvador Ramos, who was living within 1000 foot of a school zone; and

Copy from re:SearchTX

Congress passed § 922 specifically for the purposes of preventing firearms in and around schools; placing the firearms component parts such as the Hellfire trigger in interstate commerce to be around schools.

7. The defendant UPS, on information and belief, shipped the Hellfire trigger directly to the shooter Ramos who lived within 1000 feet of Robb Elementary.

8. Common carriers provide truck transportation to the general public.. U.S. Department of Transportation .

9. The shooter, Salvador Ramos, upon information and belief: 1) Had a history of mental and behavioral  problems, which was apparent by his bizarre appearance, and was well known within the small community of Uvalde,  Texas, which was in part evidenced by his nickname, "school shooter.";   2) Was under 18 years of age when he purchased the Hell Fire trigger on-line which modified the AR-15 into an automatic weapon which was used at Robb Elementary School to slaughter children and adults; 3) The shooter used his address at 715 Carrizo Drive when he purchased the Hellfire trigger, which was within  1000 feet of the Robb Elementary school grounds;  4) The Hellfire trigger was shipped through UPS to the shooters  home at 715 Carrizo Road which was within 1000 feet of Robb Elementary school grounds; 5)  The shooter used the address at 715 Carrizo Drive when making the online purchase of the AR-15 through Daniel Firearms; The illegally purchased AR-15 which was used in many mass shootings, was shipped by Federal Express to Oasis Firearms;  6)   Oasis Firearms received the weapon and  transferred the AR-15 to the shooter even though he was under 18 at the time of the purchase from Daniel Defense, and he lived within 1000 feet of the  school grounds of Robb Elementary;  7)  Oasis Firearms illegally transferred the AR-15 to the shooter Ramos, which he purchased when he was under 18 years of age; and when he lived within 1000 feet of Robb Elementary School;  9)  Oasis firearms

Copy from re:SearchTX

illegaly sold the shooter ammunition used in the AR-15 which was used to slaughter children and adults at Robb Elementary School;  10)  The close proximity of the shooters home enabled him to drive to the Robb Elemenatry School even though he could not drive a vehicle, and therefore the United Staes Code Statutes which prevent the shipping to persons under 18 and within 1000 feet of school zones would have prevented the shooting at Robb Elementary; 11) UPS and FedEx acted in combination and/or collusion  to provide AR-15 modified to machine guns to   persons who persons under 18 within school zones; 12) Effectively UPS and FedEx acted as illegal gun runners to a juvenile. 13) Arms trafficking or gunrunning is the illicit trade of contraband small arms.

10.  The Plaintiffs assert that the actions of UPS, Federal Express, individually or in combination; jointly and/or severally;  caused and proximately caused the delivery, and the modification of a weapon into the hands of a person likely to act as a school shooter and who did act as a school shooter, that is Salvador Ramos; and the Defendants abrogated various federal and state laws designed to protect school children from mass shooters by transdporting the Ar-15 and the Hellfire trigger.

11. UPS.com states as the "UPS Tariff/Terms and Conditions of Service - United States" states, "the shipper shall comply with and shall ensure that each Shipment containing   Firearm Products  complies with all federal,  state, and local laws applicable to the Shipper, recipient, and Package, including without limitation, age restrictions."

12  18 U.S.C Section 922(1)(C)  states that firearms and ammunition move easily in interstate commerce and have  been found in increasing numbers in and around schools.

18 U.S.C. Section 922(1)(D) states that even before the sale of a firearm, the gun, its component parts ammunition have considerably moved in interstate commerce,

Parents may decline to send their children to school due to concerns about gun violence.  18 U.S.C. Section 922(1)(D).  School systems find it almost impossible to handle gun related crime by themselves,(1)(H).

It is illegal to sell, deliver or otherwise  transfer to a person who the transferor knows or has reasonable to believe is a handgun or ammunition that is suitable for a handgun.18 U.S.C. 922.

13.   A 1990 federal law bans firearms within 1000 feet of public and private schools.  Robb Elementary School is located at 715 Old Carrizo Rd. in Uvalde Texas.  The shooter's home was at 552 Diaz St. Uvalde Texas.  The shooter's home is between 2 to 3 minutes from Robb Elementary, .5 miles.  Oasis firearms is located at 2900 E. Main, Uvalde Texas and it is 3.5 miles to 3.7 miles or, 10 minutes  there to 715 Old Carrizo Rd., Uvalde Texas   The distance from Robb Elementary to Oasis Firearms is 3.3 miles by street.

14.   United Parcel Service ships firearm products.  UPS shipped a Hellfire trigger System directly to an underage person, which was used to modify the AR 15 used to massacre children at the Robb Elementary School on May 24, 2024.

15.   Federal Express delivered the AR-15 to Oasis firearms, which was purchased illegally by the  underage shooter, Salvador Ramos.  The Federal Express Contract of Carriage permits has unacceptable items for carriage, such as dangerous goods.

(1) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—

      (A) a handgun; or

      (B) ammunition that is suitable for use only in a handgun.

(2) It shall be unlawful for any person who is a juvenile to knowingly possess—

(A) a handgun; or

(B)ammunition that is suitable for use only in a handgun.

18 U.S.C. Section 922(q) (2)(A)  states that it shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe is a school zone.

<u>PLAINTIFFS' CAUSE OF ACTION AGAINST DEFENDANT UPS</u>

16. The claim against UPS arises out of UPS's transportation and shipping of deadly firearm modifiers to Texas consumers without regard for the use of the product. Specifically, UPS's involvement in the transportation and shipping of Firequest International Inc.'s Hellfire Gen 2 trigger system to the Robb Elementary shooter Ramos.

UPS is a nationwide network shipping carrier that facilitates package pick-up and delivery services throughout the United States and worldwide. Upon information and belief from public records and media sources, Ramos purchased Firequest International, Inc.'s allegedly illegal Hellfire Gen 2 trigger system via online ordering while under the age of 18. Based on the information available, Hellfire Gen 2 was shipped via UPS' shipping and distribution network directly to the shooter's home in Uvalde, Texas. UPS took no action to alert its employees to the danger of this type of system or that they should not be involved in facilitating "mass murders" by transportation of potential illegal products, or at the least that the product should have been one that more information was needed  prior to transporting to Ramos. UPS negligently shipped the Hellfire trigger and enabled Salvador Ramos to shoot the children before law enforcement entered Robb Elementary.

The Hellfire Gen 2 trigger system which allows a rifle to fire at a rate comparable to a fully automatic weapon, in a similar manner to a "bump stock." The trigger system installs invisibly within the pistol grip on any AR-15 style rifle and can be activated or deactivated in seconds. The trigger system permits the shooter to have a firmer grip on the gun and stock for increased accuracy, however it also allows the shooter to pull the firearm trigger at a modified rate of 350 rpms. The transportation of this device to minors, which permits the modification of AR-15s into automatic weapons, constitutes violation of the Racketeer Influenced and Corrupt Organization Act.

UPS aided Firequest International, Inc. in the illegal sale and delivery of their trigger system when they accepted, transported, and delivered the trigger system to the underage shooter. UPS was negligent when they failed to properly screen packages for shipping and transporting of the Hellfire trigger which has been used in prior mass shootings or murders, and which has been publicized in the media. UPS is also negligent for failing to train their employees regarding safety standards, failing to enforce safety standards and protocols, and failing to inspect and maintain packages to ensure they would be safe and free from dangerous hazards. Moreover, UPS and Federal Express each shipped separate component parts which in combination were used to make an automatic weapon, that is UPS shipped the Hellfire Trigger and Federal Express shipped the AR-15 rifle. The Hellfire trigger system and the AR-15 were transferred to an underage, mentally disturbed Ramos.

The Plaintiffs assert UPS engaged in an ultrahazardous activity and abnormally dangerous activity. Therefore, UPS assumed the risk when they shipped the Hellfire trigger system.

The transportation of weapons sold weapon modifiers to minors constitutes violations of the RICO Act. UPS made no attempts to determine one or more of the

Copy from re:SearchTX

following, 1) Whether the Hellfire trigger was illegal; 2) Whether the Hellfire trigger was illegally sold directly to Ramos; 3) Whether UPS is responsible for shipping the weapon which may have been used in mass and deadly shootings.  UPS had a duty to fulfill their duty to Plaintiffs and the public at large by not shipping weapons and modifiers to persons under 18 years of age, and persons who had not been screened in conformity with ATF regulations.

17.   FedEx and UPS Defendants owed a duty of ordinary care to the public generally not to ship dangerous devices to minors; and/or to persons who have the indicia of mental illness; which could be utilized to modify firearms to commit mass murder to persons of the general public. That is, FedEx and UPS, by shipping the Hell-Fire trigger device and Assault-style rifles created a condition presenting an unreasonable risk of harm in which there was a sufficient probability of a harmful event that a reasonably prudent person would have foreseen or that some similar shooting event was likely to happen.

A duty existed by Defendants FedEx and UPS given the degree of risk to the Plaintiffs; the probability that the Hell-Fire trigger would be used against the social utility of transporting such devices to unknown persons; the insignificant burden placed on FedEx and UPS to screen for such items; and the limited consequences of placing the burden on the Defendant not to ship the item or to ship the item with adequate warnings.

The Defendants FedEx and UPS have greater knowledge of the risk or ability to control the active wrongdoer of someone who would order a Hell-Fire trigger anonymously, that was the shooter. The Defendant FedEx transported the assault-style rifles to Defendant Oasis Outback in Uvalde, Texas.  The Defendant UPS delivered the Hell-Fire trigger to the shooter. The shootings at Robb Elementary were foreseeable

Copy from re:SearchTX

due to the frequency and occasions of similar events previously reported; and were in fact within common knowledge of most persons. Mass murders have become a significant and pervasive problem in the United States, and a duty exists to United States Citizens not to facilitate mass murders and/or to prevent such mass murders. The social utility of transporting devices, such as the Hell-Fire trigger and Assault rifles, through the mail does not dismiss the duty of the FedEx and UPS as there is no right to such devices until they are 18 years of age.

The screening of such items and inquiring what the item is, or used for, presents no undue burden on the defendant, or literally no burden to FedEx and UPS.

The duty of FedEx and UPS not to ship such devices, as the Hell-Fire Trigger and the AR-15 rifles to virtually anonymous persons on line who are not screened, and or who can use the devices in a way to commit mass murder does not conflict with a more important duty.

The Plaintiffs have been "stonewalled" in all attempts to receive documents, evidence and discovery for all state and government agencies such as the Texas Department of Public Services, the Uvalde Police Department.

The Plaintiffs assert that the Defendant FedEx and UPS were performing an inherently dangerous activity; and, that the FedEx and UPS did not use the measure of a reasonably prudent person in view of the fact that the transportation of such trigger devices was extra hazardous.

Plaintiffs will show that one or more or all of the above-mentioned acts and/or omissions constitute negligence and gross negligence and were the proximate cause of harm suffered by the Plaintiffs.

As a proximate cause of the Gun Defendants' negligent entrustment, Plaintiffs have suffered and continue to suffer economic losses, including considerable financial

Copy from re:SearchTX

expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

<u>GROSS NEGLIGENCE AS TO  DEFENDANTS</u>

18.  The Plaintiffs assert a claim for gross negligence and Plaintiffs seek punitive and exemplary damages in order to punish and deter the outrageous conduct, and reckless and conscious indifference for the safety of the Plaintiffs.

The Defendants were grossly negligent in selling and delivering firearms, firearm attachments, equipment and/or ammunition and involved an extreme degree of risk, considering the probability and magnitude of potential harm to the plaintiffs and public. The Defendants proceeded with conscious indifference to the rights, safety, or welfare and the general public. The acts and/or omissions of the Defendants were knowing and willful failures to abide by the applicable safety guidelines regarding the purchase and sale of firearms. These actions and/or omissions constitute malicious, willful, wanton, grossly negligent and/or reckless conduct. The acts/or omissions proximately caused or contributed to Plaintiffs' injuries and damages set out herein, and as such, give rise to warrant, the imposition of a jury of significant punitive damages in an amount to be determined by the jury.

Plaintiffs allege that the conduct of all defendants amounted to gross negligence and/or malice as those terms are defined under Tex. Civ. Prac. & Rem. Code Ch. 41, (§ 41.001, et. seq.), as well as Texas Common Law.

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

19.  Plaintiffs reallege and incorporate each of the preceding paragraphs, and all subsequent paragraphs.

This cause of action arises under the laws of the State of Texas.

The Defendants' conduct acts and omissions, conscious choices, and deliberate indifference to Plaintiffs as alleged throughout this Complaint was intentional and done with reckless disregard for Plaintiffs' health, well-being, safety, and lives. The Plaintiffs distress was a direct result of the Defendants actions.

Defendants' conduct was extreme, outrageous, atrocious, and intolerable in a civilized community. Defendants knew or should have known that their conduct, acts and omissions, and choices would create a high degree of risk of harm to Plaintiffs. Defendants knew the Plaintiffs' vulnerabilities and susceptibility to harm given their age. Despite this knowledge, Defendants deliberately proceeded to act, and failed to act, in conscious disregard of and with indifference to that risk.

As a proximate cause of Defendants' conduct, Plaintiffs suffered, and continue to suffer severe emotional distress including fear, apprehension, terror, anxiety, panic, worry, stress, night terrors, insomnia, stress induced health effects, post-traumatic stress syndrome, mood disorders, behavioral changes, and loss of security and peace Post-traumatic stress disorder (PTSD).

Depression of the depth, intensity, and duration of the mental distress and emotional pain suffered by Plaintiffs is not ordinary, and not what children should have to endure due to the intentional and reckless conduct of the Defendants.

As a proximate cause of Defendants' conduct, Plaintiffs suffered, and continue to suffer physical and emotional damages, increased medical and mental health care visits, and loss of enjoyment of childhood.

As a proximate cause of Defendants' negligent entrustment, Plaintiffs have suffered and continues to suffer economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

Copy from re:SearchTX

20. Plaintiffs reallege and incorporate each of the preceding paragraphs, and all subsequent paragraphs.

At all relevant times, Defendants shipped the Hellfire trigger without regard to whom they were shipping and if the shipment was legal.

Based on information and belief, Defendants' products were unreasonably dangerous because the equipment they shipped was marketed, and sold so that they could be modified into a military-type automatic weapon.

Defendants are liable to Plaintiffs for injuries caused as a result of their shipping the Hellfire trigger without regard for the legality of shipping the item.

As a proximate cause of Defendants' conduct, Plaintiffs suffered, and continue to suffer physical and emotional damages, increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

The Defendants have actual or constructive knowledge that it is illegal to ship weapons and modifiers to persons under 18 years of age; to sell inherently dangerous items to young adults, without adequate training, guidance, and/or supervision and/or within the setting of a safe and supervised environment. The Defendants further have actual or constructive knowledge that the young adult civilian consumers it sells to and/or targets do not have the experience or expertise to appreciate the risk of harm to others if proper warnings, training, guidance, and instruction is not provided.

The Defendant's policy, or lack of policy, failed to provide legal and safety guidelines for their employees in regards to screening and shipping items that were illegal, or were illegally sold to minors; nor did they notify the public that these items could not be shipped to certain individuals.

Copy from re:SearchTX

As a result of Defendants' policy and procedure defects, when they left the possession and/or control of the product used by the Uvalde school shooter on the day of the school shooting.

As a result of Defendants actions, the Plaintiffs suffered, and continue to suffer physical and emotional damages, Post-traumatic stress disorder - PTSD, depression, anxiety, panic attacks, nightmares, flashbacks, intrusive recollective thoughts, phobias, insomnia, increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

<u>PUNITIVE/EXEMPLARY DAMAGES AS TO THE DEFENDANT</u>

The Defendants' conduct was done with reckless disregard for human life, oppression, and malice. The Defendants were aware of the serious and demonstrable risk of serious bodily injury and death associated with their conduct and that such risks are compounded and worsened by their intentional inaction. With full knowledge of such risks, Defendants proceeded causing Plaintiffs to suffer and sustain severe physical, mental, and emotional harm, increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

As a proximate cause of the Defendants' conduct, the adult Plaintiffs, parents and guardians, of the children present at the shooting at Robb Elementary School suffered loss of consortium and/or companionship with their children, emotional stress, lost wages on the day of the shooting, lost wages as to time off from work to take their children to medical, psychological, and psychiatric problems, and emotional problems

Copy from re:SearchTX

such as loss of sleep, weight gain and/or weight loss, additional time to devote to their children's emotional needs, and will continue to incur these losses and expenses in the future.

As a proximate cause of the Defendants' conduct, the children present at the shooting at Robb Elementary suffered emotional stress; physical and emotional damages; increased medical and mental health care visits, and loss of enjoyment of childhood and economic losses, including considerable financial expenses for medical and mental health care and treatment, and diminished income capacity, and will continue to incur these losses and expenses in the future.

The Plaintiffs, that is the adults and their children, suffered non-economic damages, that are, mental or emotional pain or anguish, loss of consortium, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other non pecuniary losses of any kind other than actual damages

8.0   The Conditions of Carriage for UPS states:  "Shipments must not contain goods which might endanger human or animal life or any means of transportation, or which might otherwise taint or damage other goods being transported by UPS, or the carriage, export or import of which is prohibited by applicable law of common carriers." UPS violated their own contracts of carriage and are negligent per se.

9.0  The Conditions of Carriage for Federal Express states: "8.1 The following items are not acceptable for carriage to any international destination: 2) EXPLOSIVES, FIREWORKS AND OTHER ITEMS OF AN INCENDIARY OR FLAMMABLE NATURE; 6)   FIREARMS, WEAPONRY, AMMUNITION AND THEIR PARTS. Federal Express violated their own contract of carriage and are negligent per se.

Copy from re:SearchTX

9.1.   "Additional restrictions may apply depending upon destination and service and service option used and various regulatory and customs clearances may be required for certain commodities, therefore extending the transit time. FedEx reserves the right to reject Packages based upon these limitations or for reasons of security or safety. FedEx shall be entitled to charge an administrative fee for packages rejected and for the costs of returning goods, where applicable, to the Sender. Further information is available upon request.

9.2.  **DANGEROUS GOODS**  The Sender must provide and shall be liable for the fully effective packaging of all Dangerous Goods, in compliance with all requirements of the latest edition of the **IATA Dangerous** Goods Regulations with regard to classifications, packaging, marking and labeling, and with any other applicable laws, regulations or rule

9.3 All Dangerous Goods which are destined for or which transit the U.S.A. must be accompanied by a Sender's Declaration and Certification as required by U.S. law, which the Sender can obtain.

9.4  **INSPECTION OF SHIPMENTS**  11.1. FedEx may, at its option, or upon the request of the competent authorities, open and inspect any Shipment at any time, and shall incur no liability of any kind therefore.

9.5.   In accordance with applicable regulations in various jurisdictions FedEx is required to undertake (random) X-ray screening. FedEx may undertake such screening and the Sender and Recipient hereby waive any possible claims for damages as a result of screening. The Defendant FedEx is an expert in shipping and are experts in the field of shipping under the standards of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993.)

Copy from re:SearchTX

10.0. The Defendant shooter lived at 552 Diaz St., Uvalde, Texas.  The grounds of Robb Elementary School are approximately 924 feet away.  A school zone means within a distance of 1000 feet from the grounds of a public school.  18 U.S.C. § 921(a)(26).

11.0  The United States Congress states that "firearms and ammunition move easily in interstate commerce and have been found in increasing numbers in and around schools, as documented in numerous hearings in both the Committee on the Judiciary the House of Representatives and the Committee on the Judiciary of the Senate  18 U.S.C. § 922(q)(1)(C).  In fact, even before the sale of a firearm, the gun, its component parts, ammunition, and the raw materials from which the are made have moved in interstate commerce; 18 U.S.C. § 922 (q)(1) (D)  (T)he occurrence of violent crime in school zones has resulted in a decline in the quality of education in our country."  18 U.S.C. § 921(q) (1) (D) It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile a handgun; or ammunition.  18 U.S.C. § 921 (q)(1) (D).   18 U.S.C. § 922 (q) (1) (D)

11.1. A licensed manufacturer may only sell a firearm to a person who does not appear in person at the licensee's business premises only if the transfer states that he is 18 years of age or more.  18 U.S.C. § 922(q)(c)(1).  Daniel Defense sold the  AR-15 to a person, the shooter, who did not state that he was 18 years of age or older and transported the weapon through FedEx..UPS also transported the AR-15 without inquiring as to the age of the purchaser."

11.2. The transferor FedEx did not, prior to the shipment of the firearm, forward a signed sworn statement to the shooter's residence, and receive a return receipt evidencing delivery of the statement.  18 U.S.C. § 922(c)(2).  The transferor FedEx did

Copy from re:SearchTX

not delay shipment or delivery for seven days following receipt of the notification.18 U.S.C.§ 922(c)(3). The acts of FedEx resulted in the failure of the guardian of the Shooter Salvador Ramos to prevent the purchase of the AR-15.

11.3 It is unlawful for a common or contract carrier to transport or deliver in interstate or foreign commerce any firearm with reasonable belief that the transportation would be in violation of 18 U.S.C. § 922. 18 U.S.C. § 922(f)(1). The contract carrier FedEx transported a weapon that was within 1000 feet of a school zone. The defendant FedEx is negligent per se for shipping a firearm to a person, the shooter Salvador Ramos, who was living within 1000 foot of a school zone; and Congress passed § 922 specifically for the purposes of preventing firearms in and around schools; placing the firearms component parts such as the Hellfire trigger in interstate commerce to be around schools. The Defendant UPS, on information and belief, shipped the Hellfire trigger directly to the shooter Ramos who lived within 1000 feet of Robb Elementary.

12. Common carriers provide truck transportation to the general public. U.S. Department of Transportation.

13. The shooter, Salvador Ramos, upon information and belief: 1) Had a history of mental and behavioral  problems, which was apparent by his bizarre appearance, and was well known within the small community of Uvalde,  Texas, which was in part evidenced by his nickname, "school shooter";   2) Was under 18 years of age when he purchased the Hell Fire trigger on-line and the AR-15 which modified the AR-15 into an automatic weapon which was used at Robb Elementary School to slaughter children and adults;  3) The shooter used his address at 715 Carrizo Drive when he purchased the Hellfire trigger, which was within  1000 feet of the Robb Elementary school grounds; 4) The Hellfire trigger was shipped through UPS to the shooters  home at 715 Carrizo Road, Uvalde,  Texas which was within 1000 feet of Robb Elementary school grounds;

Copy from re:SearchTX

5)   The shooter used the address at 715 Carrizo Drive when making the online purchase of the AR-15 through Daniel Firearms; 5)   The illegally purchased AR-15 which was used in many mass shootings, was illegally shipped by FedEx to Oasis Firearms;  6) Oasis Firearms transferred the AR-15 to the shooter even though he was under 18 at the time of the purchase from Daniel Defense, and he lived within 1000 feet of the  school grounds of Robb Elementary;  7)  Oasis Firearms illegally transferred the AR-15 to the shooter Ramos, which he purchased when he was under 18 and when he lived within a 1000

feet of Robb Elementary School;  9)  Oasis firearms received the AR-15 from FedEx and illegally sold the shooter ammunition used in the AR-15 which was used to slaughter AND traumatize children and adults at Robb Elementary School;  10 )  The close proximity of the shooters home to Robb Elementary enabled him to drive to the Robb Elementary School even though he could not drive a vehicle, and therefore the United States Code Statutes which prevent the shipping to persons under 18 and within 1000 feet of school zones would have prevented the shooting at Robb Elementary;  11) UPS and FedEx acted in combination and/or collusion  to provide AR-15 modified to machine guns to   persons who persons under 18 within school zones; 12) The actions by FedEx and UPS constituted illegal gun running, was forbidden under common law negligence, and circumvented federal and state laws.

14.   The Plaintiffs assert that the actions of UPS, Federal Express,and Oasis Firearms individually or on combination; jointly and/or severally;   caused and proximately caused the delivery, and the modification of a weapon into the hands of a person likely to act as as a school shooter and who did act as a school shooter, that is Salvador Ramos; and the Defendants abrogated various federal and state laws designed to protect school children from mass shooters.

Copy from re:SearchTX

15.   The Plainitffs suffered   personal injury damages including loss of wage-earning capacity in the future, medical expenses, mental anguish, and damages to the person of each plaintiff.  Plaintiffs specifically aver that their injuries include, but are not limited to, post-traumatic stress disorder, fear, nightmares, extreme anxiety, depression, and insomnia. In all reasonable probability, Plaintiffs will continue to suffer in this manner for a long time into the future, if not for the remainder of their natural lives. The injuries have had a serious effect on bystander mental anguish for the injuries caused to third person, the shooter. The Plaintiffs assert loss of Plaintiffs' former lifestyle, including loss of ability to play sports, have a normal social life, loss of service, increase capacity of the injured spouse to perform household services in to administer to the needs and services of the other spouse.

The adult guardians and parents sue for loss of service of the minor child, and the evidence of minors and their capacity to perform services, which may be inferred from the child's personality and family relationships.

The  Plaintiffs sue for actual damages to repair the wrongs or to compensate for severe physical injuries.

The  Plaintiffs sue for "compensatory damages", that is economic and noneconomic damages. The term does not include exemplary damages.

The Plaintiffs sue for future damages. "future damages" means damages that are incurred after the date of the judgment, these include medical bills, loss of wages, impaired earning capacity.

The Plaintiffs sue for future loss of earnings. "future loss of earnings" means a pecuniary loss incurred after the date of the judgment, including loss of income, wages, or earning capacity, and loss of inheritance.

Copy from re:SearchTX

The specific element of damage suffered by each Plaintiff will be fully described during the discovery process. The Plaintiffs preserve the right to plead additional and more specific damages in the future as more facts become known. The above-mentioned elements of damages are those that Plaintiffs have suffered in the past up to the time of trial, but in addition, those that they, in reasonable probability, will continue to suffer in the future.

17.   As a direct and proximate result of UPS engagement in an ultra-hazardous activity, negligent actions, grossly negligent actions, and violation of RICO, the parents and children incurred damages, including mental pain and suffering, medical expenses, and possible diminishment of their travel plan=s for travel, lodging, counseling and mental health care throughout their lives in the total amount of $22,500.00 each.

The damages for mental anguish and personal injuries for the bystander children including, but not limited to nightmares, loss of appetite, fear and anxiety, headaches, stomach aches, traumatizing fear of returning to school, have and will continue to be experienced by the child and children in the school. The Plaintiffs' victims also have an increased risk of developing long term mental health issues like post-traumatic stress, depression, substance abuse, alcoholism, and suicidal idealization or suicide.

In addition to the child's damages, the parents and guardians have suffered from insomnia, mental anguish, anxiety, stress, nervousness, and fear for the safety and future of their child. These damages can be expected to continue into the future.

<u>DEMAND FOR A JURY TRIAL</u>

Plaintiffs respectfully demand a trial by jury.

<u>SPOLIATION</u>

Plaintiffs require and demand that Defendants FedEx and UPS preserve and maintain all evidence pertaining to any claim or defense related to the Uvalde school

Copy from re:SearchTX

shooting or other violations made the basis of the Complaint and the alleged damages, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the shipment of the Hellfire trigger and the AR-15. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule- an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case. That all evidence, material, and those items that are related to the transportation of the Hellfire trigger and the AR-15 to Ramos, which occurred on or before May 24, 2022, be preserved until further notice or such time that these may be examined and reviewed on behalf of the Plaintiffs. Further, that the Defendants are notified that should the Defendant's UPS and/or Federal Express, or their employees or agents, lose, destroy these documents and material, whether preserved electronically or otherwise prior to granting us access to this evidence, that they subject themselves to prosecution for spoliation of evidence, judicial sanctions, and/or adverse judicial actions or instruction by the Court. Watson v. Brazos Elec. Power Corp., Inc., 918S.W.2d 639 (Tex. App. – Waco 1999, writ denied); San Antonio Press, Inc. v. Custom Machinery, 852 S.W. 2d 64 (Tex. App. – San Antonio 1993, no writ); H.E. Butt Grocery Co v. Bruner, 503 S.W.2d 340 (Tex. Civ. App.-Wace 1975, writ dism'd).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

A.      All damages alleged in this petition.

B.      Compensatory damages against all Defendants in an amount to be determined at trial;

C.      Punitive/ exemplary damages against the Federal Express and UPS in an amount to be determined at trial;

D.      Personal injuries

`       E.      Intentional infliction of emotional distress;

F.      Lost wages

G.      Future damages for loss of earning

H.      Loss of consortium

I.      Future damages of loss of income;

J.      Future loss of earnings

K.      Loss of inheritance

L.      Pre and post judgment interest

M.      Reasonable attorney fees as permitted by law

N.      Past medical expenses;

O.      Future medical expenses;

P.      Pain and suffering in the past;

Q.      Pain and suffering in the future;

R.      Mental anguish in the past;

S.      Mental anguish in the future;

T.      Bystander damages;

U.      Lost wages;

V.      Prejudgment interest;

W.      Post-judgment interest;

X.      Exemplary damages;

Copy from re:SearchTX

Y.      Loss of enjoyment in life in the past;

Z.      Loss of enjoyment in life in the future;

ZZ.     Other reasonable consequential damages.

.   ZZZ.    Such other and further relief to which the Plaintiff's may be entitled.


May_____, 2024.

                                    Respectfully submitted,
                                    By: */s/Mark A. Di Carlo*
                                    Mark A. Di Carlo
                                    722 Elizabeth Street
                                    Corpus Christi, Texas 78404
                                    Telephone: (361) 888-6968
                                    Facsimile: (361) 887-6410
                                    SBN: 05812510
                                    Service Email:
                                    markdicarlo722@gmail.com
                                    SBN: 05812510
                                    FBN:  6839



                                    ATTORNEY FOR THE PLAINTIFFS

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Mark Di Carlo on behalf of Mark Di Carlo
Bar No. 5812510
mark@markdicarlo.com
Envelope ID: 88321193
Filing Code Description: Petition
Filing Description:
Status as of 6/3/2024 8:44 AM CST

Associated Case Party: PatriciaAlvarado

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Patricia Alvarado | | markdicarlo722@gmail.com | 5/31/2024 2:34:47 PM | SENT |

Associated Case Party: UPS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| UPS UPS | | markdicarlo722@gmail.com | 5/31/2024 2:34:47 PM | SENT |

Associated Case Party: FedEx

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| FedEX FedEx | | markdicarlo722@gmail.com | 5/31/2024 2:34:47 PM | SENT |



FILED
6/10/2024 11:39 AM
Gloria A. Martinez
Bexar County District Clerk
Accepted By: Christina Carreon
Bexar County - 225th District Court

919 Congress Ave, Sixth Floor
Austin, TX 78701
P (512) 716-8600
F (512) 716-8601
www.texastribune.org

Pooja Salhotra
919 Congress Ave, Sixth Floor
Austin, TX 78701

June 10, 2024

Lucy Adame-Clark,
Bexar County Clerk
Civil Central Filing Department
100 Dolorosa, Suite 104
San Antonio, Texas 78205
210-335-2231

Dear Lucy,

Under the Texas Public Information Act, Tex. Gov't Code §552.001 et seq., I am requesting an opportunity to inspect or obtain digital copies of all court filings pertaining to case number 2024CI11581 Patricia Alvarado Et al vs UPS ET AL, filed on May 24, 2024.

If there are any fees for searching or copying these records, please inform me of the cost. However, I would also like to request a waiver of all fees because the disclosure of the requested information is in the public interest and will contribute significantly to the public's understanding of the Robb Elementary School Shooting in Uvalde, Texas. This information is not being sought for commercial purposes.

The Texas Public Information Act requires that you "promptly produce" the requested records unless, within 10 days, you have sought an Attorney General's Opinion.  If you expect a significant delay in responding to this request, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request.

Sincerely,
Pooja Salhotra

Copy from re:SearchTX